UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------
EARL REYES,

                    Petitioner,

          -against-

DALE ARTUS,

                    Respondent.
--------------------------------

REPORT & RECOMMENDATION

10cv7379(LAP)(MHD)

TO THE HONORABLE LORETTA A. PRESKA, U.S.D.J.:

      Pro se petitioner Earl Reyes seeks a writ of habeas corpus,
pursuant to 28 U.S.C. § 2254, challenging his 2007 conviction in
New York State Supreme Court, New York County, on a single count
of murder in the second degree. The court sentenced Reyes to an
indeterminate prison term of from twenty-five years to life, which
he is presently serving concurrently with a previously imposed
federal sentence.

      Petitioner has filed both an original petition, dated August
14, 2010, and an amended petition, dated August 19, 2013.[1] In his

------------------------------

      [1] See infra note 5 and discussion pp. 30-31 regarding the
dating of petitioner's filings.

1

first pleading, he asserts two versions of a Sixth Amendment claim
-- one for denial of counsel at trial and the other for denial of
effective assistance of trial counsel. (Pet. of Habeas Corpus
("Pet."), Doc. 3, p.6). The denial-of-counsel claim targets the
court's decision not to charge a lesser-included offense, and the
ineffective-counsel claim focuses on his attorney's summation.[2] In
his amended petition, Reyes first relabels his original claims to
encompass three separate grounds: "constructive denial of
counsel," "ineffective assistance," and "deprived right to
counsel." ("Amended Complaint" [sic] Pet. for Writ of Habeas Corpus
("Am. Pet."), Doc. 20 ¶ 13). Petitioner also asserts additional
grounds in his amended petition: (1) that he was denied the
effective assistance of appellate counsel; (2) that the trial court
erroneously admitted a statement that he had made before being
given warnings pursuant to Miranda v. Arizona, 384 U.S. 436 (1966);
(3) that the grand jury proceedings were flawed; (4) that the
evidence was insufficient to prove his guilt beyond a reasonable

---

[2] Petitioner's original petition was not entered into the
online docketing system and was not sequentially paginated. For
clarity of citation, we refer to pagination in Respondent's
Exhibit A ("Res. Ex. A"), which contains the exact document
attached to the original petition.

doubt; and (5) that he was denied the effective assistance of trial counsel during jury deliberations. (Id.).

Respondent opposes this petition. He contends that petitioner's original claims, related to the performance of trial counsel, are meritless and that one is untimely. (Res. Mem. in Opp'n to Pet. for Writ of Habeas Corpus ("Res. Mem."), Doc. 29, p.35). He further asserts that all of petitioner's claims first mentioned in his amended petition are untimely, that all but one are unexhausted, and that all are meritless. (Res. Mem. at 27).

For the following reasons, we recommend that the writ be denied and the petition dismissed without opportunity to appeal.

## Facts and Procedural History

The charge against Mr. Reyes stemmed from the shooting death of Carlos "Squeeze" Rosario around midnight on June 26-27, 2005 in Manhattan. The largely undisputed facts presented at trial indicate that petitioner was standing in front of the Baruch Houses in Manhattan with others when Rosario came up to him and punched him in the face. In response, petitioner pulled out a small pistol and, from close range, shot Rosario in the chest. Petitioner fired

additional shots, one of which hit Rosario in the buttocks when he was apparently turned away from Reyes. Rosario was dead from the chest wound by the time the police and an ambulance arrived. (Res. Ex. B at 8-9).

**I.   The Two Trials**

Indicted for murder in the second degree, petitioner moved to suppress statements made to police investigators prior to receiving <u>Miranda</u> warnings. After a suppression hearing conducted on November 27, 2006, the Hon. William Wetzel denied petitioner's motion. (Res. Mem. at 1-3). Reyes then proceeded to trial on January 8, 2007 before the Hon. James Yates and a jury. That trial ended in a mistrial, when the jury was unable to reach a verdict. (Res. Ex. B at 3).

On November 9, 2007, petitioner went to trial before the Hon. Michael Obus and a jury. That jury found petitioner guilty, and on December 14, 2007 Justice Obus sentenced him as noted above.

## A. The State's Case

At the second trial, the State offered the testimony of Frank Mayoral, a friend of Mr. Reyes. He recounted that Mr. Reyes knew the victim, Carlos Rosario, and had been warned prior to the shooting that Rosario was going "to get" petitioner over a drug-dealing dispute. (Trial Transcript ("Tr.") 115:4-119:23).

A witness to the homicide, Anthony Lopez, testified that Mr. Reyes was with him outside the Baruch Houses late on the night of June 26, 2005 when Rosario approached, said something to Reyes, and then punched him in the face. (Tr. 200:3-10, 204:6-14). Lopez further testified that petitioner reacted by jumping back, and that he then pulled a pistol from his waist and quickly fired a shot into Rosario's chest. (Tr. 204:18-20). According to Lopez, Rosario then attempted unsuccessfully to strike petitioner again, whereupon petitioner fired several additional shots at arm's length distance. As Rosario turned away, Reyes fired one last shot before Rosario fell to the ground. (Tr. 205:4-206:16). According to Lopez, petitioner "walked off towards the back of the projects." (Tr. 211:12-13).

The police responded to a 911 call from Lopez. (Tr. 207:7-210:12). They did not find any weapons at the scene or in the victim's clothing and effects, which had been turned over by the hospital. (Tr. 39:2-21, 64:11-65:22). Once petitioner had been identified as the shooter, police detectives found him at Mr. Mayoral's home. (Tr. 159:4-160:5). When asked about the location of the firearm, Mr. Reyes gestured to where the gun could be found in the bedroom in which he and the officers were standing. Since the gun lacked a cylinder, the police asked him where it was, and he indicated that he had tossed the cylinder out the window. (Tr. 129:21-131:14, 140:21-141:3, 161:18-22). The detectives found the handgun where petitioner had gestured, but they did not recover the cylinder. (Tr. 142:16-143:1). Forensic evidence confirmed that the gun found in the room with petitioner was the one that had fired the shots that killed the victim. (Tr. 302:11-303:15).

## B. The Defense Case

The defense presented testimony by petitioner and his brother, Robinson Reyes. Both reported that petitioner lived and sold drugs in the Baruch Houses neighborhood. (Tr. 388:1-389:6, 405:14-408:9). Each also testified that in the two months prior to

6

the shooting, Mr. Rosario had approached petitioner directly and through associates to warn him against competing in the drug trade. (Tr. 391:3-398:14, 410:18-412:4, 414:24-416:15). They also recounted that, approximately two weeks before the shooting, associates of Rosario had attempted to "rush in" to petitioner's home, and during that violent confrontation, petitioner sustained a bloody nose. (Tr. 392:4-393:4, 397:18-398:14, 480:3-23).

Mr. Reyes and his brother each also testified that Mr. Reyes feared that Rosario would gravely harm or kill him or their mother because of their dispute over sales territory. (Tr. 393:14-396:11, 445:11-448:15). Petitioner testified that a friend had lent him a gun for protection a few days before the shooting, and that he had begun carrying it loaded. (Tr. 418:14-419:3, 440:16-441:12).

As for the shooting itself, Mr. Reyes testified that Rosario had ridden up on a bike, slammed it to the ground, said something that petitioner did not understand, and then hit him in the mouth. (Tr. 422:1-423:24). Mr. Reyes claimed that Rosario had hit him with a blunt metal object. (Tr. 423:19-21). He further testified that he had thought that the victim was "going for a gun," and that he had no way to retreat, as he was boxed in by a car behind

him. (Tr. 424:20-426:13). Petitioner testified that, as Rosario jumped him again, delivering a second and third blow, his hand "tensed up," causing him to fire one shot that missed and then a second shot into Rosario's chest. (Tr. 425:19-25). Petitioner admitted that the second, fatal shot, "may have been deliberate," but that he was frightened and that Rosario was still attacking him when he fired the second shot. (Tr. 426:22-427:12). Mr. Reyes explained that "I didn't intend to shoot him. I didn't want to -- I was scared." (Tr. 429:9-10). As for the shot that hit Rosario in the buttocks, petitioner testified that he had fired additional bullets at the ground to ward off friends of Rosario, who were yelling at him, and that one bullet ricocheted and hit the victim. (Tr. 427:22-28:6).

After the shooting, petitioner walked to the apartment of his friend, Frank Mayoral, where he spent the night. (Tr. 431:3-6). Mayoral confirmed that petitioner had had a bloody mouth when he came to Mayoral's home after the shooting. (Tr. 100:1-101:13, 103:3-6). Petitioner admitted that he had the gun with him at Mayoral's home, but denied that he had done anything to the cylinder. (Tr. 432:17).

**C. The Jury Charge**

When the trial judge solicited charge requests from counsel, defense counsel first requested an instruction on the lesser charge of first-degree manslaughter, but then reported that he had to discuss the matter with his client. (Tr. 502:6-8). After conferring with petitioner, his lawyer stated that Reyes was "resisting the idea of any lesser included offense charge even if the court would give it, it would be [counsel's] request." (Tr. 503:6-9). Counsel nonetheless requested a charge on first-degree manslaughter, but then asked immediately to consult again, off the record, with petitioner. (Tr. 503:21-22).

Counsel subsequently explained that his request for a first-degree manslaughter instruction was over his client's objection, and the prosecutor stated his own opposition to including the lesser charge. (Tr. 504: 7-16). Justice Obus clarified that the issue of a justification defense was separate from the question of whether to give a manslaughter charge. (Tr. 504:17-555:10). He observed that the distinction between murder and manslaughter focused on the matter of criminal intent, and he suggested that

9

defense counsel and his client should take more time to determine whether to ask for the lesser charge. (Tr. 505:23-24).

After a recess, the defense counsel formally withdrew his request for an instruction on manslaughter, because petitioner was "absolutely adamant that he d[id]n't want it." (Tr. 508:19-20). The attorney proceeded to explain to the court that he did not think it was his client's decision to make, but that he deferred because of the strength of Reyes's objection. (Tr. 508:24-509:1). The prosecutor reiterated his objection to the lesser charge. (Tr. 509:5-13).

Thereafter, the judge engaged with counsel on the underlying rationale for a lesser charge, noting his concern that intent issues attendant to the charges could be confused with the defense of justification:

> The Court:
>
>      . . . as I understood the defendant's testimony at that point while he was claiming self-defense, he was not claiming that he did not intentionally pull the trigger.
>
>      So as to the lesser included offenses, . . . the only question is whether there is a reasonable view of the evidence that the defendant somehow intended something less than death, which would conceivably

10

support manslaughter in the first degree but not
murder.

> And I take it, Mr. Scott, that's what you had in
> mind at least initially with regard to the preliminary
> requests for a manslaughter in the first degree?

Mr. Scott:

> Yes, that's correct.

The Court:

> I would be reluctant to go ahead with a charge on
> murder and a charge on self-defense and then have the
> parties come in and we have a big argument about
> whether the defendant intended to kill as opposed to
> that [he] intended to cause serious physical injury.

(Tr. 510:8-511:6). The judge then stated that he would give more

thought to the issue of whether to include the lesser crime, even

though neither party had requested such a charge. (Tr. 513:17-21).


After the parties had conferred, the court again addressed

the defense attorney on the question of the lesser charge:


The Court:

> And I take it, Mr. Scott, that if this case goes
> to the jury without the lesser included offense, in
> essence you intend to argue that the People haven't
> proven the elements of the crime charged and also
> haven't disproven the justification defense?

Mr. Scott:

> Correct.

11

(Tr. 514:21-515:1). The court then adjourned for the weekend.

When the court reconvened, both counsel confirmed their objection to the lesser charge. At this point, the judge addressed petitioner directly to ensure that Mr. Reyes "underst[ood] exactly what the alternatives are here because if, in fact, that's the position of the parties, then I will agree not to charge the lesser included offense." (Tr. 518:1-5). The following exchange then transpired:

The Court:

    Mr. Reyes, have you discussed this matter with Mr. Scott?

The Defendant:

    Yes, your Honor.

The Court:

    And you understand that whether I submit a lesser included offense or not, justification will still be submitted to the jury as a defense and they would only actually even be instructed to consider justification if they found that the People have actually proven the elements beyond a reasonable doubt of a particular charge whether it be murder or manslaughter?

    If they found that the People had not sufficiently charged the elements -- I mean, proven the elements of a particular charge, then they would be directed to enter a verdict of not guilty without even getting to justification.

12

So the order of events would be consider murder.

If all of the elements have been proven, go ahead and consider justification.

If all of the elements haven't been proven, then find the defendant not guilty of murder and consider the lesser charge of manslaughter.

If all of the elements have been proven as to manslaughter, consider justification, but otherwise simply find the defendant not guilty.

If I don't submit the lesser included offense, then they will simply be told consider the elements of the murder.

If you find that they have not been proven, then the defendant is to be found not guilty.

If you find that they have been proven, go on to consider the justification and decide whether or not the People have proven the elements and that the conduct was not justified and render a verdict on that basis.

Do you understand the alternatives?

The Defendant:

Yes, I do, you Honor.

The Court:

And it is still your desire at this point to not have the lesser included offense submitted to the jury?

The Defendant:

Yes, your Honor.

(Tr. 518:6-519:25).

13

The court further ensured that petitioner understood that if he were convicted of murder, he would face a mandatory prison sentence of at least fifteen years and as long as life imprisonment, compared to a maximum sentence of twenty-five years on a manslaughter conviction. (Tr. 520:6-9). Finally, the judge decided that even though he believed "that there is some view of the evidence that would support a manslaughter verdict," he would not give that charge to the jury. (Tr. 520:15-20). The judge explained that he made his decision both because neither counsel requested the lesser charge and because petitioner,

> having actually gone to a trial once on these matters, [] very well understands the record, as well as the legal issues, as well as the strategic issue and tactical issue . . . and [] he is absolutely making a clear, voluntary, knowing choice not to have the matter submitted to the jury as a lesser included offense.
>
> So as long as it's clear to you, Mr. Reyes, that you will not be able to, for example, complain later on that this should have been done, I will do it the way you are requesting.

The Defendant:

     Thank you, Your honor.

The Court:

     That is what you want?

The Defendant:

14

Yes.

The Court:

OK. Then that's how we will proceed.

(Tr. 520:22-521:16).

**D. Defense Summation**

Immediately after the judge reviewed the charging issue with petitioner, defense counsel delivered his summation. (Tr. 522). In addressing the murder charge, counsel stated:

> When you hear the Court's instructions about the elements of the crime of murder in the second degree, you won't hear anything about a motive, just whether he intended to cause death, whether he did cause death and whether or not he was justified.
>
> There is no doubt that he caused the death. It's not in issue.
>
> It's hard to argue that he did not intend to cause the death given the close range and where the bullet ended up in Mr. Rosario's body, so I won't argue that.
>
> There is little doubt, however, that Earl Reyes was justified.

(Tr. 525:10-23). Petitioner's attorney then elaborated on the "justified use of deadly physical force" and the evidence that supported a justification defense. (Tr. 537:9-12, 543:23-544:2).

15

**E. Jury Deliberation**

During the course of deliberations, the jury sent out eight notes, first asking for clarification of the elements of second-degree murder and then indicating an inability to reach a consensus. First, the jury requested the full text of the New York Penal Law definition of second-degree murder. (Tr. 672:2-5). The judge provided that definition orally, but did not provide the jury with a written copy. (Tr. 672:18-24). At the same time, the judge articulated the statutory definition of intent. (Tr. 673:2-3).

A second note came back from the jury requesting "to know if depraved indifference to human life by the defendant resulting in the victim's death is sufficient to convict the defendant of second degree murder?" (Tr. 674:8-12). The judge answered the jury question, "no," and added that the requirement of intent to cause the death of another was required. (Tr. 676:2-3).

A third note came from the jury stating the jury's "request to terminate our deliberations as we remain deadlocked on the charge of second degree murder." (Tr. 677:24-678:2). The judge

called in the jury and responded by noting the difficulty of jury deliberation and the need to reach a unanimous verdict. (Tr. 679:24-684:2). He encouraged the jury members to "make every possible effort to arrive at a just verdict here" (Tr. 682:22-23), denied their request, and sent them back to deliberate. (Tr. 684:9-12).

Two more notes arrived in the afternoon of that same day. (Tr. 685:10-686:1). The fourth note indicated that the jury needed clarification whether

> if we find beyond a reasonable doubt as a matter of
> fact that at any time from the first punch up to and
> including the firing of the last bullet the defendant
> had the intent to kill the victim and beyond a
> reasonable doubt that one of the shots did in fact
> kill the victim, is that sufficient to support a
> finding of guilt as to the charge of murder in the
> second degree?

(Tr. 685:10-20). The fifth note asked whether "the defendant [must] have had the intent to kill when he fired the fatal shot which did kill the victim." (Tr. 685:21-686:1).

The judge then addressed the jury on both notes, explaining that "in order to establish this element of the charge of murder in the second degree, that is the intent element, the People are

required to prove that the defendant had the intent to kill at the time he caused the death." (Tr. 688:4-9). Elaborating, the judge added that "it is not necessary that the People establish the intent to kill was present in the mind of the defendant for any period of time prior to the act in question. However, the People must prove that such an intent was in the mind of the defendant at the time he caused the death of the other person, and in this case that means at the time that he fired the fatal shot." (Tr. 688:10-19). The judge added that if the jury found that the elements of the charge had been established, it was still necessary to "go on and consider justification." (Tr. 688:21-24).

The jury came back again with a sixth note the next day, asking to have deliberations terminated because it remained "deadlocked on the charge of Murder in the Second Degree." (Tr. 690:3-6). Alternately, the jury asked for a schedule for the remainder of the week and the following week because of travel plans among the members. (Tr. 690:7-10). The judge denied the request to terminate deliberations and addressed the travel and schedule concerns, which involved the Thanksgiving holiday beginning the next day. (Tr. 692:12-694:25).

Following the Thanksgiving holiday, the jury sent out a seventh note, indicating that it had arrived at

> a fundamental disagreement on the issue of intent. We
> are convinced that further deliberations will not be
> productive. We're not in disagreement with the basic
> facts, but we do disagree with whether the prosecution
> has proved beyond a reasonable doubt that the
> defendant intended to kill the victim at the time the
> fatal shot was fired. It may be that we will not
> ultimately get a verdict from this jury.

(Tr. 700:8-18).

The judge announced his plan to call the jury out and respond to the note with "somewhat of an expanded charge on the subject of intent" and then see whether that was helpful or not. (Tr. 700:19-701:7). Before the jury was brought out, the prosecutor suggested that the judge could instruct the jury to treat "the defendant's conduct as one continuous act and not as a series of separate acts." (Tr. 701:9-21). The prosecution explained that in doing so,

> it would be sufficient for a jury to find that if at
> some point during that act he had the intent to cause
> the victim's death and it was that act that caused the
> victim's death that that I think would be sufficient
> for them to have to convict on a charge of murder.

(Tr. 701:22-702:3). The defense counsel disagreed with the prosecutor and asked that Justice Obus simply provide an expanded intent charge. (Tr. 702:16-18).

When the jury came out, the judge elaborated on the concept of intent, reminding the jurors that "the charge requires proof that with the intent to cause the death of another person, the defendant caused the death of that person." (Tr. 705:1-4). The judge then read the following expanded charge on intent:

> To expand somewhat on that concept, intent does not require premeditation.
>
> In other words, intent does not require advanced planning, nor is it necessary that the intent be in a person's mind for any particular period of time.
>
> The intent can be informed -- formed and need only exist at the very moment the person engages in prohibited conduct or acts to cause the prohibited result and not at any earlier time.
>
> In this case, of course, the prohibited result is the death of the victim.
>
> The question naturally arises as to how to determine whether or not a defendant had the required intent for the commission of a crime.
>
> To make that determination in this case, you must decide if the required intent can be inferred beyond a reasonable doubt from the proven facts.

In doing so, you may consider the defendant's conduct and all of the circumstances surrounding that conduct including but not limited to the following:

What, if anything did the defendant do or say?

What result, if any, followed the defendant's conduct?

And was that result the natural, necessary and probable consequence of that conduct?

Therefore, in this case from the facts you find to have been proven decide whether or not you can infer beyond a reasonable doubt that the defendant had the intent required for the commission required [sic.] for the crime at the time he engaged in the prohibited conduct.

Again, of course, this is an element that the People must prove beyond a reasonable doubt.

I remind you again that I am not suggesting any result one way or another, but I will ask each of you to reconsider your own view further in light of my somewhat expanded discussion of this concept.

(Tr. 705:9-707:4). After a short recess, the jury sent an eighth note requesting the judge to repeat more slowly the expanded intent instruction he provided. (Tr. 708:1-8). The judge proceeded in substance to reiterate the intent charge for the jury. (Id. at 709:16-713:13). He also asked whether any member of the jury wanted him to repeat any portion of the instruction. (Tr. 713:14-15).

The jury came back that afternoon with a verdict, finding Mr. Reyes guilty of murder in the second degree. (Tr. 715:11-716:4).

21

**F. Sentencing**

Mr. Reyes was arraigned for sentencing on December 14, 2007 before Justice Obus. (Sentence Transcript ("Sent. Tr.") 1). The first matter raised at this hearing was a _pro_ _se_ motion by petitioner to set aside the verdict pursuant to N.Y.C.P.L. § 330.30.[3] (Sent. Tr. 2:12-23). Mr. Reyes indicated that he was forced to submit the motion _pro_ _se_ because his attorney would not do so. (Sent. Tr. 3:7-11; _Coram Nobis_ Ex. 3). In that motion, Reyes argued that the court's instructions to the jury were defective, that the trial judge had erred by issuing a _Sandoval_ ruling different from that of the judge in his first trial, that he had been prejudiced by a delay in jury deliberations over the holiday weekend, that the judge had erred in admitting evidence of petitioner's prior convictions, and that there was a due-process error in connection with the failure to find a material witness. (_Coram Nobis_ Ex. 3).

Defense counsel confirmed on the record that he had discussed the matter with his client and that he had "refused to make such

---

[3] The 330.30 motion is appended to petitioner's _Coram Nobis_ application as Exhibit 5, Doc. 21-1 at 2-13.

22

a motion." (Sent. Tr. 22:2-5). Counsel explained that such a motion was best left to "the specialized knowledge and expertise of appellate practitioners, and of course an appeal will be taken." (Id. at 22:6-11). Nonetheless, he supported the client's motion, agreeing with Reyes's assertions and requesting an adjournment of the proceeding for fuller briefing on the motion. (Id. at 22:12-17, 23:20-23).

The trial judge noted at least four times during the sentencing hearing that the issues of law raised in petitioner's 330.30 motion and elsewhere at trial were preserved on the record and reviewable on appeal. (Sent. Tr. 3:12-17, 27:19-21, 28:13-18, 31:6-12). He denied the motion (id. at 31:6-7) after explaining that his Sandoval ruling on the scope of cross-examination was appropriate and had not prejudiced the jury (id. at 28:5-23), that petitioner had misquoted and misinterpreted the jury note regarding the obstacle in their deliberations on intent (id. at 28:25-29:14), that petitioner had waived his objection to the adjournment of the jury over Thanksgiving and, in any event, the jury had deliberated carefully (id. at 29:15-30:7), and that the material witness had no interest in appearing and would not have helped the defense had he been located. (Id. at 30:16-31:2).

23

As for the sentence, Justice Obus addressed the escalating seriousness of petitioner's criminal conduct and imposed a sentence of 25 years to life, to run concurrently with a current sentence on federal gun charges. (Sent. Tr. 33-35).

## II.  Post-Conviction Direct Appeals

On September 26, 2008, counsel for petitioner filed his direct appeal to the Appellate Division, First Department. (Res. Ex. A (date stamp on last page)). In that appeal he made three assertions: (1) that the police did not have a public-safety exception to question him about the gun cylinder without having first given him <u>Miranda</u> warnings, and that therefore his statement admitting his possession and disposal of the cylinder should have been suppressed; (2) that he had been deprived of his Sixth Amendment right to counsel at a critical stage in the proceedings when he was allowed to make the decision not to request that the lesser charge of first-degree manslaughter be submitted to the jury; and (3) that he had been deprived of the effective assistance of counsel when his attorney conceded in closing arguments that the prosecutor had proved his intent to kill, a required element for second-degree murder. (Res. Ex. A at 2).

24

The Appellate Division rejected these arguments and affirmed Reyes's conviction on May 21, 2009. <u>People v. Reyes</u>, 62 A.D.3d 570, 881 N.Y.S.3d 36 (1st Dept. 2009). On the <u>Miranda</u> issue the court held that that the police had been operating on the basis of an objectively reasonable public-safety concern. <u>Reyes</u>, 62 A.D.3d at 570-71, 881 N.Y.S.2d at 38 (citing <u>New York v. Quarles</u>, 467 U.S. 649 (1984)). The court further reasoned that even if the admission of Reyes's statement about the cylinder had been erroneous, the error would have been harmless, because petitioner had conceded possession of the gun and had admitted shooting Rosario. <u>Id.</u> at 571, 881 N.Y.S.2d at 38.

The court next rejected the claim of denial of counsel -- a claim based on the contention that defendant had been permitted to make the decision not to request the lesser-included-offense instruction. <u>Reyes</u>, 62 A.D.3d at 571, 881 N.Y.S.2d at 38. The court reasoned that even though "such a strategic decision is normally made by counsel, it does not follow that when counsel acceded to his client's wish, defendant was then effectively proceeding pro se." <u>Id.</u> The court further noted that the judge's "thorough inquiry into defendant's understanding" of the decision was unnecessary,

but nonetheless helpful, in ensuring that petitioner's rights had been protected. Id.

Finally, the court rejected petitioner's ineffective-assistance claim. In doing so, it found the claim "unreviewable on direct appeal because it involves matters outside the record concerning counsel's summation strategy and any consultations he may have had with defendant concerning that strategy." Reyes, 62 A.D.3d at 571, 881 N.Y.S.2d at 38. The court further observed that "to the extent [the record] permits review," Reyes had received effective assistance under state and federal standards. Id. at 571-72, 881 N.Y.S.2d at 38-39.

Petitioner requested leave to appeal to the Court of Appeals on June 22, 2009. (Res. Ex. E). That timely application was denied by the Hon. Victoria A. Graffeo on August 21, 2009. (Res. Ex. G).

## III.  The C.P.L. § 440.10 Motion

On May 10, 2010 petitioner filed a pro se motion to vacate under C.P.L. § 440.10. Invoking both state and federal grounds, he asserted that he had been denied the right to counsel and the right to effective assistance of counsel at trial. (Pet. Ex. A). Both of

these labels covered the claim -- which the Appellate Division had found unreviewable on direct appeal -- that his trial lawyer's concession during summation about his intent to kill had constituted a Sixth Amendment violation. The State filed its opposition on May 28, 2010, noting that although the Appellate Division had alluded to the possibility that Reyes might supplement the record in support of his section 440.10 motion, he had failed to do so and had simply reiterated his prior argument complaining about trial counsel's concession. (Res. Ex. I).

Justice Obus denied petitioner's motion on July 2, 2010. (Res. Ex. J). The judge noted that Reyes had not documented any factual basis to support his challenge to his attorney's decision to focus on the justification defense rather than the intent issue, and that the Appellate Division had already rejected the argument that the mere fact that counsel had made that choice was ipso facto ineffective assistance. (Res. Ex. J at 3-4). He went on to note that, like the appellate panel, he viewed trial counsel's strategy as "reasonable," observing:

> While it would not have been technically inconsistent to assert both arguments, counsel reasonably chose not to rely on a weaker argument as to the defendant's intent, but rather to focus on a justification defense

27

that was supported by, and was the thrust of, his
client's testimony.

(Id. at 4). Accordingly, he found no violation of petitioner's right to effective counsel under either federal or state law. (Id.).

On July 14, 2010 petitioner sought leave to appeal Justice Obus's ruling to the Appellate Division. (Res. Ex. K). The District Attorney opposed that application by letter dated October 18, 2010. (Res. Ex. L). Associate Justice Eugene L. Nardelli denied the application on November 30, 2010. (Res. Ex. M).[4]

Petitioner then sought leave from the New York Court of Appeals to appeal the Appellate Division's refusal of leave to appeal. (Res. Ex. N). Associate Judge Theodore T. Jones dismissed petitioner's application under C.P.L. § 460.20 on February 9, 2011, noting that the Appellate Division order was not appealable. (Res. Ex. O).

---

[4] We note that Reyes filed his original federal habeas petition on or about August 14, 2010, while his leave application on his 440.10 motion was still pending before the Appellate Division.

**IV.   Petitioner's _Coram Nobis_ Application**

On August 19, 2013 -- three years after the filing of Reyes's original federal habeas petition -- petitioner filed a pro se coram nobis application with the First Department.[5] (Motion for Writ of Error Coram Nobis, Doc. 21, Aug. 23, 2013 ("Coram Nobis") 1).[6] In that motion, petitioner asserted that he had been denied the effective assistance of appellate counsel on his direct appeal from his conviction. (Id.).

In his application, petitioner claimed that appellate counsel had raised "harmless, inappropriate, and unreviewable claims," while omitting claims with merit. (Coram Nobis 18). Based on that premise, he asked the appellate court to review the merits of a number of arguments that he apparently believed should have been raised by appellate counsel. These included (1) the failure of

---

[5] A copy of the coram nobis application was filed in this court on August 23, 2013; however, the first page of the court filing indicates that it was notarized and presumably turned over for mailing to prison officials on August 19, 2013. We use the earlier date per the prison-mailbox rule. See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001).

[6] For clarity, pagination to the coram nobis petition is by the court's docketing page numbers, and not the page numbers in the document itself.

trial counsel to move for a mistrial when the jurors sent out a note reporting a deadlock and asking that their deliberations be terminated (id. at 23); (2) a defect in the grand-jury proceeding because the jurors were not given a justification instruction (id. at 26); (3) the insufficiency of the evidence at trial to warrant conviction (id. at 28); (4) a contention that the weight of the evidence did not support a finding of intent to kill (id. at 33); and (5) denial of effective assistance of trial counsel because of his attorney's concession of intent during summation. (Id. at 36).

The Appellate Division denied the coram nobis application. Petitioner has since informed us that the New York Court of Appeals denied his leave application on October 3, 2014. (Pet.'s Notice of Exhaustion, Doc. 35, Oct. 20, 2014).[7]

## V.   The Current Proceeding

The original petition for a writ of habeas corpus was received on September 10, 2010 and filed with this court on September 27,

---

[7] We do not have documentation from the New York courts indicating the disposition of petitioner's coram nobis application, but petitioner concedes its rejection. (Pet.'s Notice of Exhaustion, Doc. 35, Oct. 20, 2014).

2010. Nonetheless, consistent with the prison-mailbox rule, we consider August 14, 2010 to be the filing date for limitations purposes, because the petition was dated, and presumably delivered to prison authorities, on that date. (Pet. ¶ 18). See Noble, 246 F.3d at 97.[8]

Petitioner's amended petition was filed with this court on September 10, 2013, but we deem it to have been filed on August 19, 2013, as the document was so dated. (Am. Pet. ¶ 16(b)). This filing was contemporaneous with petitioner's application for a writ of coram nobis in the Appellate Division. (Coram Nobis 1). At the same time, petitioner moved to stay these proceedings in order to give him time to exhaust his state remedies on the coram nobis application. (Pet.'s Motion to Stay, Doc. 19, Aug. 19, 2013). Shortly thereafter we denied the stay motion based on petitioner's failure to demonstrate good cause for his not having exhausted the

---

[8] By the time that Reyes filed his original habeas petition, his conviction had been affirmed by the Appellate Division, leave to appeal had been denied by the New York Court of Appeals, petitioner had filed his collateral 440.10 motion, that motion had been denied, and petitioner had sought leave to appeal that motion.

31

newly stated claims before filing his original petition. (Order Aug. 26, 2013, Doc. 22).

We received notice from petitioner on October 20, 2014 that his coram nobis application had been denied, as had his request for leave to appeal that denial. (Pet.'s Notice of Exhaustion, Doc. 35).

## **ANALYSIS**

I. **Standard of Review**

The stringency of federal habeas review turns on whether the state courts have passed on the merits of a petitioner's federal claim, that is, whether the decision of the highest state court to consider the claim is "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (discussing 28 U.S.C. § 2254(d)). If the state court has addressed the merits, the petitioner may obtain relief only if the state court's ruling

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme
Court of the United States; or

   (2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See, e.g., Bell v. Cone, 535 U.S. 685, 693-94
(2002); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor,
J., concurring); Besser v. Walsh, 601 F.3d 163, 178 (2d Cir. 2010),
vacated on other grounds sub nom. Portalatin v. Graham, 624 F.3d
69 (2d Cir. 2010) (en banc); Howard v. Walker, 406 F.3d 114, 121-22
(2d Cir. 2005).


   Clearly established federal law "'refers to the holdings, as
opposed to the dicta, of the Supreme Court's decisions as of the
time of the relevant state-court decision.'" Howard, 406 F.3d at
122 (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)).
"[A] decision is 'contrary to' clearly established federal law 'if
the state court arrives at a conclusion opposite to that reached
by [the Supreme] Court on a question of law or if the state court
decided a case differently than [the Supreme] Court has on a set
of materially indistinguishable facts.'" Id. (quoting Williams,
529 U.S. at 413).

What constitutes an "unreasonable application" of settled law is a somewhat murkier proposition. "'A federal court may not grant habeas simply because, in its independent judgment, the "relevant state-court decision applied clearly established federal law erroneously or incorrectly."'" Id. at 122 (quoting Fuller v. Gorczyk, 273 F.3d 212, 219 (2d Cir. 2001)). The Supreme Court observed in Williams that "unreasonable" did not mean "incorrect" or "erroneous," noting that the writ could issue under the "unreasonable application" provision only "if the state court identifies the correct governing legal principle from this Court's decisions [and] unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 410-13. As implied by this language, "'[s]ome increment of incorrectness beyond error is required . . . [H]owever, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions "so far off the mark as to suggest judicial incompetence."'" Monroe v. Kuhlman, 433 F.3d 236, 246 (2d Cir. 2006) (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)); accord Richard S. v. Carpinello, 589 F.3d 75, 80 (2d Cir. 2009).

Under the Supreme Court's more recent, and arguably more stringent, interpretation of the statutory language, "[a] state

34

court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." <u>Id.</u> at 102. Under this more recent interpretation, a federal habeas court has the limited "authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." <u>Id.</u> In other words, to demonstrate an 'unreasonable' application of Supreme Court law, the habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u> at 103.

35

As for state courts' factual findings, under the habeas statute "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). <u>See</u> <u>also</u> <u>Rice v. Collins</u>, 546 U.S. 333, 338-39 (2006); <u>Richard S.</u>, 589 F.3d at 80-81; <u>McKinney v. Artuz</u>, 326 F.3d 87, 101 (2d Cir. 2003). "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller v. Cockrell</u>, 537 U.S. 322, 340 (2003). We apply a "highly deferential" standard in reviewing a state court's decision on a federal constitutional issue. <u>Hardy v. Cross</u>, 132 S. Ct. 490, 491 (2011)(<u>per curiam</u>). Indeed, the Supreme Court has held that "[a] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." <u>Wood v. Allen</u>, 558 U.S. 290, 301 (2010).

36

**II.   Assessment of Petitioner's Claims**

Petitioner's original petition articulated two claims, both targeting his trial lawyer's performance. Although the petition listed both claims as "Ground One," (Pet. at 6)(referring to "ineffective counsel/denial [of] counsel,"), he cited, for further explanation, his Appellate Division brief, which made plain that this terminology covered two separate, if parallel, claims -- first, that his attorney and the trial court had followed his instruction not to seek a lesser-included-offense charge, and, second, that his lawyer had effectively conceded intent during his summation. (Compare Res. Ex. A at 33-55, 56-62). Petitioner also attached to his first petition his section 440.10 motion, which again targeted trial counsel's summation statement regarding intent. (Res. Ex. H).

Petitioner's amended petition, dated August 19, 2013, was accompanied by his August 19, 2013 coram nobis application. The new petition is quite cryptic, simply listing Reyes's grounds as "Violation of right to self-incrimination, Constructive Denial of Counsel, Miranda warnings, Ineffective Assistance, Legal[ly] Insufficient Evidence, Defective Grand Jury Proceedings, Deprived

37

right to counsel, [and] Ineffective Assistance of Appellate Counsel." (Am. Pet. ¶ 13). Between the amended petition itself and the accompanying motion we gain some clarity and understand Mr. Reyes to be reiterating his original two Sixth Amendment claims and asserting five new claims, including (1) ineffective assistance of appellate counsel based on his pressing weak claims and ignoring more potent grounds for appeal (Coram Nobis 18-23)[9]; (2) a claimed Miranda violation (Am. Pet. ¶ 13), which echoes a ground that petitioner had asserted on his direct appeal (see Res. Ex. A. at 25-32); (3) a complaint about the prosecutor's instructions to the grand jury (Coram Nobis 26-27); (4) claims that the evidence was insufficient and that the conviction was against the weight of the evidence (id. at 28-35); and (5) a new claim of ineffective assistance based on trial counsel's failure to seek a mistrial because of a jury deadlock. (Id. at 23-25).

For reasons that follow, we conclude that the claims asserted in the original petition are timely but meritless, and that the

---

[9] Petitioner argued in his coram nobis application that counsel should have challenged the sufficiency of the evidence, argued that the conviction was against the weight of the evidence, and targeted the prosecutor's instructions to the grand jury. (Coram Nobis p. 18-20).

new claims embodied in the amended petition are untimely under the habeas statute, as well as meritless, and, in part, unexhausted and procedurally barred.

## A. Claims Asserted in the First Petition

In the original petition, Reyes asserted two timely claims under the Sixth Amendment.[10] Both are meritless.

---

[10] Respondent argues that Reyes's denial-of-counsel claim is untimely because he first asserted it in his amended petition. (Res. Memo at 29-30, 57). This is incorrect. The first petition listed two claims -- denial of counsel and denial of effective representation. Although that pro se pleading was not a model of clarity, it is to be read with liberality in view of petitioner's pro se status, Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 472 (2d Cir. 2006), and it plainly was intended to track the two Sixth Amendment claims found in the appellate brief filed by Reyes's counsel. One -- arguing denial of counsel -- addressed the jury-charge colloquy and the decision by the trial court not to charge the lesser-included offense; in contrast, the claim of ineffective counsel concerned the trial lawyer's concession of intent on his summation. Properly understood, therefore, Reyes's first petition, by adopting the identical language from the state-court appellate brief, encompasses the argument that the failure of the trial court to charge manslaughter denied him his right to counsel.

## 1. Denial of Counsel During the Charge Conference

Mr. Reyes's first claim is that he was deprived of his right to counsel at a "critical stage" of the trial, when the judge and defense counsel allowed him to make the decision not to include an instruction as to manslaughter in the first degree when charging the jury. (Res. Ex. A at 33-55). Petitioner claims that the consequences of this decision were "monumental": he notes that the jurors deliberated over four days and submitted notes indicating a potential deadlock and a misunderstanding about the charge, and he asserts that they would likely have convicted him of manslaughter, rather than murder, had that been an option. (Id. at 52-55). In seeking to characterize this sequence as a denial of counsel, in violation of the Sixth Amendment, he states that the decision whether to seek a lesser-included instruction is generally viewed as a tactical decision that the attorney may make, rather than deferring to his client. (Id. at 48). When the judge, in effect, allowed petitioner to make this decision himself and without any warnings from the court about the risks of self-representation, Reyes asserts, the effect was to deprive him of representation at a critical stage of the trial. (Id. at 48-50). Petitioner asserts that the judge also erred by not submitting the

lesser charge once he acknowledged that a reasonable view of the evidence would allow for that charge. (<u>Id.</u> at 49).

Respondent counters that petitioner's claim is without merit because there is no clearly established Supreme Court law mandating warnings about self-representation under circumstances such as this. (Res. Mem. 62). According to respondent, petitioner never acted as a <u>pro</u> <u>se</u> defendant at his trial, because counsel remained in place as his attorney, continuing to represent and consult with him. (<u>Id.</u> at 64). But in any event, respondent argues, the trial judge conducted a thorough inquiry that did serve "to ensure that petitioner's ultimate decision was knowing, voluntary, and intelligent." (<u>Id.</u> at 66).[11]

_____

[11] Respondent also argues that petitioner cannot show that this decision met the threshold of having a "substantial and injurious effect" on the verdict, because there was no dispute that petitioner had fired the shot that killed the victim, and that he had done so at close range. Accordingly, respondent says, it was reasonable for the jury to find that in firing the shot, petitioner had the requisite intent to kill. (<u>Id.</u> at 69-70). Since we conclude that Reyes was not denied his right to counsel, we need not assess this "harmless error" argument. Nonetheless, we note that respondent appears to conflate the question of whether the evidence sufficed to permit a murder conviction with the quite distinct issue of whether the failure to charge manslaughter was harmless. In view of the jury's

### a. Legal Standards

Criminal defendants have a clearly established right to representation by competent counsel. See, e.g., United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). The Supreme Court has also recognized, as a corollary, that a defendant may proceed without counsel. Faretta v. California, 422 U.S. 806, 819-20 (1975) ("The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails."). However, because a criminal defendant relinquishes many benefits when he proceeds without counsel, clearly established Supreme Court law requires the trial court to ensure that a would-be pro se defendant has knowingly and intelligently waived his right to counsel. Id. at 835; Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)(The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"). Moreover, because the Supreme Court has directed trial courts to "'indulge in every reasonable presumption against waiver' of the right to counsel, Brewer v. Williams, 430

---

reported struggles with the "intent" question, we at least
question whether this ruling was harmless.

U.S. 387, 404 (1977), a defendant must 'articulately and unmistakably assert[ ] his desire to avail himself of the constitutional right to self-representation. . . .'" United States v. Weisz, 718 F.2d 413, 425 (D.C. Cir. 1983)(emphasis in original)(quoting United States v. Bailey, 675 F.2d 1212, 1300 (D.C. Cir. 1982)).

If such a demand is made and granted, the Second Circuit has held that we may look to the record as a whole to determine whether the defendant's choice of self-representation was made "with eyes wide open." Torres v. United States, 140 F.3d 392, 401 (2d Cir. 1998). The Torres Court explained that the trial court "should engage the defendant in an on-the-record discussion" and ascertain whether the defendant understood the trade-offs in having a professional representation and made "an intelligent choice." Id. The Second Circuit in Torres found it constitutionally sufficient that the court, at each stage of the trial, had described the Government's burden and informed the defendant of the benefits of having an attorney, even though the defendant openly refused to mount any defense at all. Id. The Court emphasized the "sanctity of freedom of choice" for a criminal defendant and concluded that her "decision not to participate in the proceedings did not

43

undermine her knowing and intelligent waiver." Id. at 402. Indeed, even when a defendant was forcibly removed from the courtroom for disruptive conduct and no standby counsel was appointed, the Second Circuit reluctantly found that there was no "unreasonable application of Supreme Court precedent" that would warrant the issuance of a writ of habeas corpus. Davis v. Grant, 532 F.3d 132, 145 (2d Cir. 2008).

The Supreme Court has never held, or implied, that these standards -- including mandated warnings -- apply where a criminal defendant does not seek to represent himself, but rather simply participates in strategic or tactical decision-making with his attorney. Moreover, in cases in which a defendant is allowed to share so-called "core" functions with his attorney, such as examining witnesses or delivering a summation -- an arrangement referred to as "hybrid" representation -- the circuit courts have divided on whether, and to what extent, the trial judge must provide Faretta-type warnings. Compare Banks v. Horn, 271 F.3d 527, 537-39 (3d Cir. 2001), rev'd on other grounds, 536 U.S. 266 (2002); United States v. Leggett, 81 F.3d 220, 223-24 (D.C. Cir. 1996), with United States v. Davis, 269 F.3d 514, 519-20 (5th Cir. 2001); United States v. Turnbull, 888 F.3d 636, 638 (9th Cir.

44

1989); <u>Wilson v. Hunt</u>, 29 Fed. App'x. 324, 328 (6th Cir. 2002)(discussing cases).

### b. Assessment

In this case, Reyes did not purport to waive his right to counsel, nor was he deprived of representation at any stage. His attorney actively defended his interests throughout the trial, including at the charging conference.

The record demonstrates that during the conference, counsel was consulting closely with his client on the question of whether to request a lesser-included-offense charge, and ultimately the attorney acceded to his client's strong desire not to ask for one. At that point the lawyer communicated to the court the defendant's opposition to a manslaughter charge, and the trial judge then addressed the defendant to ascertain his understanding of the implications of that decision. (Tr. 517-18).

This sequence does not reflect any demand by the petitioner to conduct any aspect of the trial without counsel. Rather, it shows simply that the attorney actively consulted his client on a tactical decision and acceded to his wishes, then properly made a

45

record of the substance of their discussions, and thereby elicited a useful inquiry by the court to ensure that the defendant was well informed of the consequences of that decision.

Petitioner's claim fails, at the very least, because there is no settled Supreme Court precedent that defense attorney's accession to a client's opinion on a tactical question amounts to a denial of counsel or triggers a requirement for a <u>Faretta</u>-type colloquy with the court. Indeed, the lower courts have suggested the contrary. Thus, for example, in <u>Banks</u>, the defendant demanded to testify (apparently with disastrous results), and insisted on the introduction of certain exhibits, and yet the Third Circuit held that there was no requirement of a warning to the defendant when his counsel disagreed with his client's demands.[12] 271 F.3d at 537-39.

Still more strikingly, a number of courts have held that even when a defendant takes over some core attorney functions -- including examination of witnesses and delivering of a summation

_____

[12] A defendant of course has the right to testify even over his attorney's recommendation not to do so. <u>See</u> <u>Bennett v. United States</u>, 663 F.3d 71, 84 (2d Cir. 2011); <u>Brown v. Artuz</u>, 124 F.3d 73, 79 (2d Cir. 1997).

-- the trial court was not compelled by <u>Faretta</u> to treat that arrangement as tantamount to a demand for self-representation. <u>See</u>, <u>e.g.</u>, <u>Wilson</u>, 29 Fed. App'x. at 328-29; <u>Leggett</u>, 81 F.3d at 223-24 (citing cases). In any event, as the court in <u>Wilson</u> noted, "the Supreme Court has never specifically discussed the recommended contents of a court's colloquy with a defendant before undertaking only some parts of his defense. . ." <u>id.</u> at 329, and lower courts have required only very "thin[]" warnings regarding a decision to proceed <u>pro se</u>. <u>See</u> <u>id.</u> (citing cases).

Here, the attorney remained in charge, and the court followed up by conducting a fully adequate colloquy with Reyes about his decision. The court plainly engaged petitioner in an on-the-record inquiry and ensured that petitioner's rejection of his counsel's suggestion to request a lesser-included-offense charge was knowing and intelligent. The judge further gave petitioner time during the trial and during a weekend recess to confer with counsel and consider his decision, and he clearly reviewed with petitioner the two versions of the jury charge. Most significantly, the judge stated on the record that petitioner had stood trial previously on the same charge and was well aware of the tactical and strategic issues involved in rejecting the lesser-included charge.

47

Under these circumstances, the rejection by the Appellate Division of Reyes's "denial of counsel" claim did not contradict or unreasonably apply Supreme Court precedent. Accordingly, habeas relief is unavailable.

### 2. Ineffective Counsel During Summation

Petitioner's second claim, raised on his direct appeal and reiterated in his C.P.L. § 440.10 motion, asserted that he had been denied effective assistance of counsel when his defense attorney, during summation, conceded the intent-to-kill element of the murder charge. (Res. Ex. A at 56-62; Res. Ex. H). Petitioner initially raised this claim on direct appeal, but the court did not fully address it because it required reference to attorney-client discussions on strategy that were not in the trial record. Reyes, 62 A.D.3d at 571-72. The panel did go on to state that to the extent that the trial record was before it and reflected on counsel's performance, his representation was not ineffective. Petitioner then raised the claim in his section 440.10 motion, and Justice Obus denied it on the merits, noting Reyes's failure to supplement the record that had been before the appellate panel and agreeing with that panel that the trial lawyer had made a

48

defensible tactical decision to focus solely on the justification defense. (Res. Ex. J at 4).

Petitioner argues two related points: first, that his trial attorney undermined the chosen legal strategy of the case, and, second, that his counsel failed to provide adequate representation when he conceded the prosecution's burden to show intent to kill. (Res. Ex. H). Respondent argues, first, that petitioner's challenge is procedurally barred because Justice Obus supposedly denied the post-judgment motion on independent and adequate state ground, and, second, that the claim is meritless. (Res. Mem. 36-49).

The claim is not procedurally barred, but it is meritless.

### a. Procedural Bar Standards

If the last state court to address a federal-law claim disposes of it on a "state law ground that is 'independent of the federal question and adequate to support the judgment,'" a federal habeas court may not review that claim unless the petitioner demonstrates both cause for his default and prejudice or else establishes that a failure to address the claim would constitute

a fundamental miscarriage of justice. See, e.g., Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)); see also Jimenez v. Walker, 458 F.3d 130, 136 (2d Cir. 2006) (citing Harris v. Reed, 489 U.S. 255, 260 (1989)). A state procedural rule can qualify as an adequate and independent state-law ground. See Harris, 489 U.S. at 260-61.

To be independent, the state-law holding must rest on state law that is not "'interwoven with the federal law.'" Jimenez, 458 F.3d at 137 (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)). Since it can be "'difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference,'... reliance on state law must be 'clear from the face of the opinion.'" Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (quoting Coleman, 501 U.S. at 732, 735). When determining whether we may entertain a claim, we "apply a presumption against finding a state procedural bar and 'ask not what we think the state court actually might have intended but whether the state court plainly stated its intention.'" Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) (quoting Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000)).

In this regard, even if the appellate court rejects the claim as unpreserved and then, in the alternative, notes that if it had reviewed the merits it would have rejected the claim, the ruling is deemed, for this purpose, to have rested on the state-law procedural ground. See Murden v. Artuz, 497 F.3d 178, 191 (2d Cir. 2007) ("Even where the state court has ruled on the merits of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default.") (citing Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005)); cf., e.g., Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (state court's "contingent observation" is not an "adjudication on the merits" for purposes of habeas review).

As for the requirement of adequacy, the state procedural rule must be "'firmly established and regularly followed by the state in question' in the specific circumstances presented in the instant case." Murden, 497 F.3d at 192 (quoting Monroe, 433 F.3d at 241); see Lee v. Kemna, 534 U.S. 362, 376 (2002); Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003) (citing Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999)). However, principles of comity caution against categorizing a state procedural rule as inadequate "lightly or

without clear support in state law." <u>Garcia</u>, 188 F.3d at 77 (internal quotation marks omitted).

Once respondent has demonstrated that the state court relied on an independent and adequate ground, it is incumbent upon petitioner to meet one of two recognized exceptions. Under procedural-bar rules, we may not review the merits of the claim unless petitioner can overcome his procedural default by either "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or [establishing] ... that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750; <u>see also</u> <u>Fama</u>, 235 F.3d at 809.

To demonstrate cause, petitioner must establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," for example, by showing that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials... made compliance impracticable." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986) (citing <u>Reed v. Ross</u>, 468 U.S. 1, 16 (1984), and quoting <u>Brown v. Allen</u>, 344 U.S. 443, 486 (1953)). A

petitioner may also satisfy the cause requirement by demonstrating that the failure of his attorney to comply with state procedural rules denied him constitutionally adequate representation. See Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999). He cannot invoke this ground, however, unless he first asserted an equivalent independent Sixth Amendment claim in state court and exhausted his state-court remedies with respect to that claim. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). In any event, it bears emphasis that "[a] defense counsel's ineffectiveness in failing to properly preserve a claim for review in state court can suffice to establish cause for a procedural default only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel." Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001).

The second exception -- that failure to review petitioner's claims would result in a fundamental miscarriage of justice -- is reserved for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496; accord Sawyer v. Whitley, 505 U.S. 333, 339 n.6 (1992). To establish "actual innocence," petitioner must demonstrate that "in light of all the

53

evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998)(quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)) (internal quotation marks omitted). In this context, "actual innocence means factual innocence, not mere legal insufficiency." Id. at 623. Furthermore, the petitioner must support his claim "'with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.'" Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004) (quoting Schlup, 513 U.S. at 324); see also Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002).

### b. Procedural Bar Assessment

In arguing for procedural bar, respondent seems to say, first that the Appellate Division denied the claim on its merits, and, second, that Justice Obus denied the 440.10 motion on an independent and adequate state ground. (Res. Mem. 36). If this characterization were accurate, respondent's bar claim would fail, since the Appellate Division addressed the claim on its merits. But, in fact, respondent errs in its historical account, though his procedural argument fails anyway.

As noted, the Appellate Division held that the petitioner's ineffective-counsel claim was not properly before it because the assessment of the trial attorney's performance necessitated an evidentiary inquiry into the attorney's reasons for his surrender of the intent question. Accordingly, the court observed that Reyes should proceed by way of a 440.10 motion, which would permit him to create such a record. Reyes, 62 A.D.3d at 571-72, 881 N.Y.S.2d at 38-39. Although the panel also went on to observe that it saw no denial of effective representation insofar as the trial record reflected what trial counsel had done, id., that alternative holding does not alter our assessment that the appellate court's denial of the claim rested on the state-law procedural ground. See, e.g., Murden, 497 F.3d at 191.

That said, even if respondent had properly construed the appellate panel's ruling, that would not save his procedural-bar argument. As noted, petitioner followed the Appellate Division's direction and asserted the same claim in his 440.10 motion, and Justice Obus proceeded to deny it on its merits. In asserting that the judge relied on a procedural finding, respondent misrepresents his reasoning. When arguing his Sixth Amendment claim before the trial court, Reyes merely reiterated his assertion from his

appellate brief that his attorney's surrender of the intent issue was, of necessity, constitutionally deficient representation; he did not seek to create an evidentiary record that would demonstrate that counsel's performance in this respect constituted an egregious error rather than a colorable tactical decision. Thus Justice Obus denied his motion for failure of proof, and indeed went on to find that the attorney's choice to focus solely on the justification defense was within the scope of constitutionally competent performance. (Res. Mem. Ex. J at 3-4).

In sum, the state courts ultimately ruled on the merits of Reyes's claim, and the denial of his application to the Appellate Division for leave to appeal from the trial court's 440.10 decision cannot be deemed a basis for a procedural bar. See, e.g., Sellan, 261 F.3d at 311. See generally Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991)(court looks to last state court to rule in determining whether procedural default triggered rejection of claim; "[s]tate procedural defaults are not immortal . . . ; they may expire because of later actions by state courts.")

### c. Merits

#### i.   Sixth Amendment Standards

When a habeas petitioner asserts a claim of ineffective assistance of counsel, the court must apply a "doubly deferential standard of review" -- one "that gives both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 134 S. Ct. 10, 13 (2013)(quoting Cullen v. Pinholster, 134 S. Ct. 1388, 1403 (2011)). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." Burt, 134 S. Ct. at 16 (quoting Harrington, 562 U.S. at 102). Our review is also highly deferential because "the Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." Id. at 18. The burden "rests squarely on the defendant" to overcome the "'strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.'" Id. at 17 (quoting Strickland v. Washington, 466 U.S. 668, 687-90 (1984)).

The Strickland test requires the defendant to prove "both that his attorney was ineffective and that the attorney's errors

resulted in prejudice to the defendant." Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010)(citing Williams, 529 U.S. at 363). Generally, to demonstrate ineffective assistance of counsel, a petitioner must show that his lawyer's performance was "so defective that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment . . . and that counsel's errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Brown, 124 F.3d at 79 (quoting Strickland, 466 U.S. at 687); see also Larcier v. United States, 2010 WL 4118100, *1 (S.D.N.Y. Oct. 19, 2010). As summarized in Brown:

> To satisfy the first, or "performance," prong, the defendant must show that counsel's performance was "outside the wide range of professionally competent assistance," and to satisfy the second, or "prejudice," prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Id. at 79-80 (quoting Strickland, 466 U.S. at 690, 694); accord, e.g., Smith v. Spisak, Jr., 558 U.S. 139, 155 (2010); Palacios v. Burge, 589 F.3d 556, 561 (2d Cir. 2009); Henry v. Poole, 409 F.3d 48, 62-64 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004).

It bears emphasis that the Strickland standard is quite deferential, and that a claim of constitutional dimension does not arise unless a lawyer's error is so egregious as to amount to a failure to provide minimal professional representation. Thus, a habeas court weighing an ineffective-assistance claim must "determine whether, in light of all the circumstances, [counsel's] identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; accord, e.g., Kimmelman v. Morrison, 477 U.S. 365, 386 (1986); Loliscio v. Goord, 263 F.3d 178, 192 (2d Cir. 2001). In making this determination, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance." Strickland, 466 U.S. at 690.

The burden of proving prejudice is equally onerous. As noted, the petitioner must demonstrate "a reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Aparicio, 269 F.3d at 95 (citing Strickland, 466 U.S. at 687).

Tactical decisions and even strategic or tactical errors are also ordinarily not grounds for finding a constitutionally

defective representation, because a habeas petitioner is bound by the agency of his attorney, "absent extraordinary circumstances." Murray, 477 U.S. at 485-86. Judged by these criteria, petitioner's claim plainly fails.

### ii.  Assessment

In Justice Obus's denial of petitioner's section 440.10 motion, he found it reasonable for the defense attorney to have emphasized the justification defense over a much weaker argument that the prosecution had not met its burden to prove intent. (Res. Ex. J at 4). We agree with Justice Obus that trial counsel's decision to emphasize the justification defense was well within the reasonable range of professional assistance.

We start by noting that counsel did not in fact explicitly concede the intent issue, but rather observed that the state's evidence on that issue was quite strong. This acknowledgment contrasted with his explicit concession that Reyes had killed the victim, and it allowed him a smooth transition to the heart of the defense case, which rested on the justification defense.

The attorney's decision to handle the alternative theories in this way reflects an obvious, and defensible, tactical decision. The justification defense was clearly petitioner's strongest argument based on his trial testimony, and the argument that Reyes lacked the intent to kill -- which counsel chose to forego -- was much the weaker one. Indeed, the fact that Reyes had fired multiple shots at Mr. Rosario from close range, striking him in the chest, and had then continued shooting, even after his victim had turned away, strongly supported an inference of intent. Had counsel persisted in actively arguing that issue despite this evidence, he ran the risk that the jury would have discounted his credibility when he pursued the further -- and much stronger -- argument that petitioner's conduct was protected by a justification defense. See, e.g., Brown v. LaValley, 2013 WL 2154161, *4 (E.D.N.Y. May 17, 2013); Tucker v. United States, 2012 WL 4354806, *9 & n.93 (S.D.N.Y. Sept. 24, 2012).

In making this choice, trial counsel was engaged in a typical tactical assessment of what would best serve his client's interests, and the choice that he made cannot be classified as so

devoid of reason as to suggest sub-professional performance.[13] <u>See</u>
<u>generally</u> <u>Farrington v. Senkowski</u>, 214 F.3d 237, 244 (2d Cir.
2000); <u>United States v. Arnold</u>, 126 F.3d 82, 89 (2d Cir. 1997),
<u>aff'd sub nom.</u>, <u>Holloway v. United States</u>, 526 U.S. 1 (1999).

Apart from the colorable nature of counsel's decisions, we
note that the state court found his conduct in this respect to be
fully defensible. (Res. Ex. J at 3-4). Absent controlling Supreme
Court precedent to the contrary -- and we are aware of none --
habeas relief would be barred in any case under 28 U.S.C. §
2254(d)(1). As noted, petitioner's burden here is to "overcome
that substantial deference [to the state court's determination]
and establish that the state court's decision on ineffective
assistance was contrary to, or an unreasonable application of,

---

[13] The fact that the jury was apparently split on the issue
of intent during a portion of its deliberations cannot justify a
<u>post-hoc</u> conclusion that counsel's decision as to how to handle
that question and the justification defense was constitutionally
sub-par. <u>See</u> <u>Figueroa v. United States</u>, 1993 WL 88213, *9
(S.D.N.Y. Mar. 24, 1993), <u>aff'd</u>, 17 F.3d 391 (2d Cir. 1993)
("Courts are not to second-guess tactical decisions and
judgments, whether or not they prove in retrospect to have been
wise.")(citing <u>United States v. Eisen</u>, 974 F.2d 246, 265 (2d
Cir. 1992); <u>United States v. Nersesian</u>, 824 F.2d 1294, 1321 (2d
Cir. 1987); <u>Cuevas v. Henderson</u>, 801 F.2d 586, 590 (2d
Cir.1986); <u>Trapnell v. United States</u>, 725 F.2d 149, 155-56 (2d
Cir. 1983)).

<u>Strickland</u>." <u>Rosario</u>, 601 F.3d at 123. Reyes has plainly failed to do so.

**B. Claims Raised for the First Time in the Amended Petition**

**1. Timeliness Standards**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on the filing of habeas petitions in federal court. 28 U.S.C. § 2244(d)(1). Under its terms, the petitioner has one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" to file a petition in federal court. <u>Id.</u> The judgment is deemed final either when the Supreme Court denies a petition for a writ of certiorari or when the time for making such an application has expired, which is a period of ninety days following final review by the state courts.

See, e.g., Dillon v. Conway, 642 F.3d 358, 360 n.3 (2d Cir. 2011);
Williams v. Artuz, 237 F.3d 147, 148-49 (2d Cir. 2001).[1]

The statute of limitations may be tolled when "a properly
filed application for State post-conviction or other collateral
review with respect to the pertinent judgment or claim is pending",
28 U.S.C. § 2244(d)(2); see, e.g., Fernandez v. Artuz, 402 F.3d
111, 116 (2d Cir. 2005), but such filings do "not reset the date
from which the one-year statute of limitations begins to run."
Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)("If the one-year
period began anew when the state court denied collateral relief,

---

[1] Section 2244 specifies three other accrual points, none of
which are applicable in this case:

> (B) the date on which the impediment to filing an
> application created by State action in violation of
> the Constitution or laws of the United States is
> removed, if the applicant was prevented from filing by
> such State action;

> (C) the date on which the constitutional right
> asserted was initially recognized by the Supreme Court
> if the right has been newly recognized by the Supreme
> Court and made retroactively applicable to cases on
> collateral review; or

> (D) the date on which the factual predicate of
> the claim or claims presented could have been
> discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(B)-(D).

then state prisoners could extend or manipulate the deadline for federal habeas review by filing additional petitions in state court.”). Additionally, a court may, in its discretion, invoke equitable tolling, but only in “rare and exceptional circumstance[s].” Id. (citing Turner v. Johnson, 177 F.3d 390, 391-392 (5th Cir. 1999)). “Equitable tolling is only appropriate where a party is ‘prevented in some extraordinary way from exercising his rights’” and has otherwise pursued his case diligently. Miller v. Rabsatt, 2014 WL 7336456, *7 (S.D.N.Y. Dec. 24, 2014)(quoting inter alia, Smith, 208 F.3d at 17).

### 2. Timeliness Assessment

In this case, the New York Court of Appeals denied Reyes leave to appeal on August 21, 2009. Since he did not seek certiorari from the Supreme Court, the one-year clock began to run on November 19, 2009. Reyes filed his section 440.10 motion on May 10, 2010, by which time 172 days had passed since the limitations time had begun to run. The clock restarted on November 30, 2010, when the Appellate Division denied petitioner leave to appeal the denial of

his 440.10 motion.[14] The balance of the one-year period -- 193 days -- expired on June 11, 2011.

As noted, Reyes filed his original petition on August 14, 2010. Hence the two claims embodied in that pleading -- complaining about the court's agreement not to charge a lesser-included offense and his trial attorney's concession regarding intent -- were timely asserted. Petitioner failed, however, to pursue habeas relief on the balance of his current claims until he filed his amended petition in August of 2013 -- well past the June 11, 2011 deadline.[15] Since the habeas statute of limitations is claim

---

[14] The limitations period was not tolled during the time between the Appellate Division denial of leave to appeal and the rejection of his follow-up leave application by the New York Court of Appeals, because that second leave application was not "properly filed" under New York law. See Clark v. McKinney, 2007 WL 2126273, *6 (E.D.N.Y. July 24, 2007)(recognizing that the Appellate Division's denial of leave to appeal is the "last stop" for a section 440.10 petition, and therefore declining to toll the period when the petitioner sought leave to appeal to the New York Court of Appeals); see also Ramos v. Walker, 88 F. Supp. 2d 233, 236 (S.D.N.Y. 2000)(distinguishing between how AEDPA treats tolling for direct appeals and post-conviction appeals under CPL § 440, and holding that collateral appeals are only considered "properly filed" for purposes of tolling the AEDPA statute of limitation while they are pending in state court).

[15] We deem the date of filing of the amended petition to be August 19, 2013 based on the prison-mailbox rule. (Am. Pet. ¶ 16(b)). See, e.g., Noble, 246 F.3d at 97; see also Fed. R. App. P. 4(c)(1). See note 5 and discussion supra pp. 30-31.

specific, <u>Rivas v. Fischer</u>, 687 F.3d 514, 534 (2d Cir. 2012)(the habeas statute requires district courts "to analyze the factual bases of each claim"), the claims first introduced in the amended petition are presumptively time-barred. We further conclude that petitioner cannot invoke any legal basis for escaping that conclusion.

We infer from petitioner's filing of his <u>coram</u> <u>nobis</u> application with his amended petition that he may have intended to reset his one-year period with this collateral state <u>coram</u> <u>nobis</u> motion. However, his effort is unavailing since that filing was made more than two years after the statute of limitations had expired. As noted, the filing of a collateral challenge in state court after the running of the one-year habeas deadline does not reset the clock. <u>See</u>, <u>e.g.</u>, <u>Smith</u>, 208 F.3d. at 17.[16]

Petitioner also cannot justify invocation of equitable tolling, which is available under AEDPA only if a petitioner can

---

[16] We also note that when petitioner filed his amended petition here and simultaneously filed a <u>coram</u> <u>nobis</u> motion in state court, all the claims introduced in the state-court motion other than those previously raised on his state-court direct appeal and section 440.10 motion were unexhausted, in contravention of 28 U.S.C. § 2254(b)(1)(A).

show: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010)(quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). See, e.g., Jenkins v. Green, 630 F.3d 298, 302 (2d Cir. 2010); Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004); Smith, 208 F.3d at 17. Petitioner, who bears the burden of proof, see, e.g. Bolarinwa v. Williams, 593 F.3d 226, 232 (2d Cir. 2010), has not identified any circumstance -- much less an extraordinary one -- that prevented him from asserting his new grounds for habeas relief between his original August 14, 2010 filing and the June 11, 2011 expiration of the one-year period. To the extent that he needed to exhaust his state-court remedies with respect to the new claims, he was free to do so -- depending on the specific claim -- on his direct appeal, on his 440.10 motion, and on a coram nobis application, which, if filed before the limitations clock had expired, would have tolled the statute. Instead, he hoarded his new claims for invocation on the coram nobis motion,[17] and he waited

---

[17] To the extent that he asserted claims, other than ineffective assistance of appellate counsel, on his coram nobis motion, he also failed properly to exhaust these claims, which should have been presented either on direct appeal or (insofar

68

until two years after the expiration of the limitations period to file that motion.

Petitioner equally fails to demonstrate that he acted diligently in seeking to assert his rights. As noted, he delayed years in asserting his most recent claims and did so without demonstrated justification.

Reyes also cannot avoid the time bar by invoking Fed. R. Civ. P. 15(c)(2), which states than an amendment may relate back to an original pleading when both the original pleading and the amendment arise out of the same "conduct, transaction, or occurrence." In Mayle v. Felix, 545 U.S. 644 (2005), the Supreme Court held, in the habeas context, that an amendment may relate back "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts." Id. at 664. A claim will not relate back, however, "when it asserts a new ground for relief

---

as he complained of another omission by trial counsel) possibly on his 440.10 motion. See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989)(presentation of claim to state courts in manner that does not trigger review is not "fair presentation"); Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000).

supported by facts that differ in both time and type from those the original pleading set forth." Id. at 650.

In so holding, the Court rejected a reading of the rule adopted by some of the circuits that permitted any amendment concerning the same trial, conviction, or sentence as the original petition to relate back, saying that if the new claims first raised in the proposed amendments could be revived simply for that reason, the "AEDPA's limitation period would have slim significance." Mayle, 545 U.S. at 662; see, e.g., Kirk v. Burge, 646 F. Supp. 2d 534, 551 (S.D.N.Y. 2009). In sum, Mayle dictates that amended claims do not relate back when they are "separate in both time and type from the original raised episodes." 545 U.S. at 657.

Applying this standard to petitioner's new claims, we readily conclude that none relate back to his original petition. That pleading embodied two claims -- first, that Reyes had been denied counsel when his trial attorney and the court acceded to his demand not to charge the lesser-included offense, and, second, that he was denied effective assistance when his trial attorney told the jury on summation that he would not argue that Reyes had lacked

the intent to kill. All of the new claims, however, are "separate both in time and type from the[se] original raised episodes." Id.

The new claims -- as reflected on petitioner's coram nobis application -- address (1) the performance of appellate counsel in not raising certain claims on petitioner's direct appeal, (2) the failure of the police to give petitioner a Miranda warning at the time of his arrest and the introduction of a post-arrest statement during the trial, (3) the purported inadequacy of the prosecutor's instructions to the grand jury, (4) the sufficiency of the trial evidence, and (5) the failure of the trial attorney to ask for a mistrial when the jury reported a deadlock in its deliberations. None of these are related, in terms of substance or time, to the original claims.

The claim of ineffective appellate counsel concerns the performance of the appellate attorney, specifically, conduct during petitioner's appeal from his conviction. Hence, it addresses events distinct in time from the claims asserted in the original petition, which targeted events occurring during the trial. See, e.g., Sookoo v. Heath, 2011 WL 6188729, *5 (S.D.N.Y. Dec. 12, 2011)(citing Mayle, 545 U.S. at 657). The new Sixth

Amendment claim also concerns conduct and issues different from those invoked in the first pleading. Thus, Reyes criticizes his appellate counsel for not arguing that (1) the conviction was unsupported by sufficient evidence or was against the weight of the evidence, and (2) that the prosecutor had failed to give the grand jury correct instructions. These underlying issues were entirely absent from the original petition. Moreover, although petitioner also complains that the appellate lawyer should have argued ineffective assistance of trial counsel, he premises this hypothesized and omitted claim on the trial lawyer's failure to seek a mistrial during jury deliberations -- a purported failing of trial counsel that Reyes did not mention in his original petition. That omission also demonstrate that this aspect of his ineffective-appellate-counsel claim does not relate back. See, e.g., Sookoo, 2011 WL 6188729 at *6 (citing cases); Peralta v. Connelly, 2008 WL 8050791, *9 (S.D.N.Y. April 18, 2008)(citing cases). See also Reyes v. LaValley, 2013 WL 4852313, *6 (E.D.N.Y. Sept. 10, 2013).

    The remaining new claims do not relate back for similar reasons. All concern stages in the trial-court proceedings -- and in one case during grand-jury proceedings -- that differ from the

events targeted in the original petition. Moreover, all raise issues regarding actions entirely unrelated to the failings of trial counsel articulated in the first pleading.

Finally, since petitioner is pro se, we note still another exception to the time bar that is at least theoretically available to him. The Supreme Court recently held that a petitioner who demonstrated "actual innocence" may thereby have his underlying habeas claims addressed even if he failed to assert them in a timely fashion. McQuiggin v. Perkins, 133 S. Ct. 1924, 1928, 1931--34 (2013); accord Rivas, 687 F.3d at 543. To satisfy this test, however, the petitioner must make a showing of "new evidence" that is "reliable" and "compelling." Rivas, 687 F.3d at 541, 548. See Schlup v. Delo, 513 U.S. 298, 324 (1995). As the Supreme Court cautioned, "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 133 S. Ct. at 1928 (quoting Schlup, 513 U.S. at 329).

73

Petitioner does not pursue an actual-innocence showing, and in the absence of compelling new evidence, he plainly could not prevail on such a theory. See, e.g., Smith v. Chappius, 2014 WL 5786945, *2 (S.D.N.Y. Nov. 6, 2014).

In sum, the new claims asserted in the amended petition are time-barred.

### 3. The Merits of the Untimely Claims

Even if we were to ignore the untimeliness of the claims that Reyes first raises in his amended petition, he would fail to justify any habeas relief.

#### a. Ineffective Assistance of Appellate Counsel

Of all the new claims mentioned in the amended petition, petitioner's assertion that appellate counsel denied him effective

representation is one of only two that were preserved in state court.[18] This claim, however, is meritless.

We have previously summarized the rigorous standards governing Sixth Amendment claims of ineffective assistance of counsel. See pp. 57-60 supra. "Although the Strickland test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing cases). In the context of such claims, the Supreme Court has stated that "[i]t is no[t] hard[] for a court to apply Strickland ... when a defendant claims that he received ineffective assistance of appellate counsel because his counsel, although filing a merits brief, failed to raise a particular claim." Smith v. Robbins, 528 U.S. 259, 287-88 (2000). Thus, a petitioner asserting a claim of ineffective assistance of appellate counsel must show both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal and that, but for counsel's error, there was a reasonable probability that

---

[18] The other presumed claim concerns the arresting detective's failure to give petitioner Miranda warnings before he made an inculpatory statement about the cylinder of his firearm. See pp. 79-81, infra.

defendant's appeal would have been successful. See, e.g., Mayo, 13 F.3d at 533; Lozada v. Brown, 2014 WL 6845192, *20 (S.D.N.Y. Dec. 4, 2014); Chrysler v. Guiney, 14 F. Supp. 3d 418, 459-60 (S.D.N.Y. 2014).

We emphasize that, with respect to the performance prong of the Strickland test, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288. "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Sellan, 261 F.3d at 317 (quoting Smith, 477 U.S. at 536; Jones v. Barnes, 463 U.S. 745, 751-52 (1983)). Necessarily, then, "reviewing courts should not employ hindsight to second-guess an appellate attorney's choices concerning strategy." Quintana v. McCoy, 2006 WL 300470, *6 (S.D.N.Y. Feb. 6, 2006) (citing Jones, 463 U.S. at 754).

Petitioner entirely fails to meet these requirements to show that his attorney's choice of issues on appeal was so substandard

and so prejudicial as to constitute a Sixth Amendment violation. The simple fact is that Reyes's conviction was supported by more than adequate evidence, and the trial was conducted scrupulously by Justice Obus. In the absence of any compelling arguments, appellate counsel chose three issues that -- at least arguably -- were deemed the stronger ones to pursue. The only ones of any consequence were the two Sixth Amendment claims, although they were also not at all likely to trigger relief for Reyes. Petitioner speculates that alternative arguments might have had a better chance of success; however, his assertions amount to rank second-guessing of counsel, and he also entirely fails to demonstrate any prejudice in counsel's purported errors.[19]

Indeed, for reasons noted below, we conclude that the various alternative arguments that Reyes included in his coram nobis application -- apparently indicating which theories he believes appellate counsel should have advanced -- are all completely meritless. See pp. 79-85, infra.

---

[19] Indeed, for reasons noted below, we conclude that the various alternative arguments Reyes included in his coram nobis application are all completely meritless. See discussion infra pp. 79-85.

Finally, we note that, to trigger the limitations on habeas review under section 2254(d), "the state court need only dispose of the petitioner's federal claim on substantive [not procedural] grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required." Aparicio, 269 F.3d at 94 (citing Sellan, 261 F.3d at 312). Indeed, the state court's decision need not contain any explanation of the reasons for its ruling, and the habeas court is to presume that the state court ruled on the merits "in the absence of any indication or state-law procedural principles to the contrary." Harrington, 562 U.S. at 99.

Thus, the summary denial of Reyes's coram nobis application constitutes a ruling on the merits of his Sixth Amendment claims. Accordingly, his petition can be granted on these grounds only if the state-court ruling was "contrary to or an unreasonable application of Strickland." Nicholas v. Smith, 329 F. App'x 313, 316 (2d Cir. 2009); see also Glover, 2009 WL 2512858, at *5 ("The state court denied [petitioner's] coram nobis application challenging his appellate counsel's performance in a single-word order —— '[d]enied.' This constitutes adjudication on the merits. . . ."); Zapata v. Greiner, 2001 WL 1670367, *3 (S.D.N.Y. Dec. 28,

2001). For reasons noted, the rejection by the Appellate Division of his <u>coram</u> <u>nobis</u> application cannot be shown to be contrary to, or an unreasonable application of, settled Supreme Court law.

In short, petitioner's claim of ineffective appellate counsel is groundless.

### b. Failure to Provide <u>Miranda</u> Warnings before Questioning

In his amended petition Mr. Reyes identified "Miranda warnings" and "violation of right to self-incrimination" as two claims that we infer involve the same argument. (Am. Pet. ¶ 13). In the state appellate brief that petitioner attached as support for his original habeas petition, he asserted that police detectives had improperly questioned him about the missing revolver cylinder before giving him <u>Miranda</u> warnings. (Res. Ex. A 25-32). [20]

---

[20] Petitioner's <u>coram</u> <u>nobis</u> brief attached to his amended petition only elaborates on the <u>Miranda</u> claim insofar as it refers to appellate counsel's purported errors in presenting that claim. (<u>Coram Nobis</u> 16-17).

This claim was preserved by virtue of petitioner's assertion of it on direct appeal. (Res. Ex. A at 25-32). That said, the Appellate Division rejected it on the merits, triggering the limitations on review under section 2254(d). The panel's ruling was plainly correct, and certainly not an unreasonable application of controlling Supreme Court precedent.

As recounted at trial, the police entered the room in which petitioner was found, and asked where the gun -- as yet unrecovered -- was located. Reyes gestured to a part of the room, where they found the weapon without its cylinder. They then asked him where the cylinder was, and he reported having thrown it out the window. As the panel found, the second question was at least arguably justified by the public-safety exception recognized in New York v. Quarles, 467 U.S. 649 (1984), and in any event, admission of testimony describing the question and Reyes's response at trial was, at most, harmless error, since he had conceded not only possession of the gun but also responsibility for shooting Rosario. Reyes, 62 A.D. 3d at 570-71, 881 N.Y.S.2d at 37-38.

In short, this claim is entirely meritless.

### c. Error in Instructions to the Grand Jury

Petitioner asserts for the first time in his amended petition that his due-process rights were violated by errors the prosecutor made in instructing the grand jury. (Am. Pet. ¶ 13; Coram Nobis 26-27). This claim too fails for multiple reasons.

Petitioner failed to assert this claim on direct appeal, rendering it unexhausted and subject to procedural-bar analysis.[21] See Jimenez, 485 F.3d at 149 (when a prisoner has not fairly presented a federal claim to state court, he "has procedurally defaulted his claims and is ineligible for federal habeas relief absent a showing of 'cause and prejudice' or 'a fundamental miscarriage of justice.'")(quoting O'Sullivan v. Boerckel, 526 U.S. 838, 854 (1999)). That analysis would yield a conclusion that the claim is barred since petitioner cannot show cause for his

---

[21] The AEDPA requires a state prisoner to exhaust available state remedies before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1). This requirement ensures that the state had an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995)(per curiam)(internal quotations and citations omitted). In order to ensure that the state has been apprised of the federal claim, the prisoner must "'fairly present' his claim in each appropriate state court." Baldwin v. Reese, 541 U.S. 27, 29 (2004)(quoting Duncan, 513 U.S. at 365-66).

failure to assert it on appeal or resultant prejudice, see, e.g.,
Gray v. Netherland, 518 U.S. 152, 162 (1996),[22] and he surely cannot
demonstrate that failure to consider it would amount to a
fundamental miscarriage of justice.[23]

Apart from the procedural bar, the Supreme Court has held
that errors in grand jury proceedings are harmless when a petit
jury subsequently returns a guilty verdict, because such a result
"means not only that there was probable cause to believe that the
defendants were guilty as charged, but also that they are in fact
guilty as charged beyond a reasonable doubt." United States v.

---

[22] The failure to invoke this hypothetical claim cannot be
deemed a Sixth Amendment violation -- and hence a "cause" for
petitioner's default -- since the claim is meritless. In any
event the denial of petitioner's coram nobis application
constitutes a ruling on the merits, and petitioner makes no
showing that Appellate Division's coram nobis denial was
erroneous, much less an unreasonable application of Supreme
Court law.

[23] In this regard, we note that appellate counsel sent a
letter to his client explaining why he would not argue this
claim (and others) and detailing the strategy for the direct
appeal of his conviction. (Coram Nobis Ex. 5 at 18). Citing
appropriate case law, counsel explained to Mr. Reyes that he
would not be raising the issue because it would be unsuccessful
on appeal. (Id.). Appellate counsel also clearly advised Mr.
Reyes of his right to file a pro se supplemental brief to the
Appellate Division to raise this or any other issue not asserted
in the attorney's brief, and he provided instructions on how to
do that. (Id. at 19).

Mechanik, 475 U.S. 66, 70 (1986). Applying the reasoning in
Mechanik, the Second Circuit has further held that claims of error
in state grand jury proceedings are also not cognizable in a habeas
corpus proceeding. Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989).
See also Webb v. LaClair, 2014 WL 4953559, *6 (S.D.N.Y. Sept. 30,
2014)(finding that no habeas relief is available on a claim of
grand jury error when the error "'could not have made any
constitutional      difference      because      he      suffered      no
prejudice.'")(quoting Saldana v. State of N.Y., 850 F.2d 117, 119
(2d Cir. 1988)). Moreover, the Fifth Amendment's grand jury clause
has not been incorporated by the Fourteenth Amendment against the
states, and for this reason as well, claims based on errors in
grand-jury proceedings are not cognizable as a constitutional
issue. LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002).

     In short, petitioner's claim of error in the grand jury
instructions does not justify habeas relief.

### d. Insufficiency of Evidence

     Petitioner also asserts a new claim in his amended petition
that the evidence presented at trial was insufficient to prove
that he had the requisite intent for second-degree murder. (Coram

83

Nobis 28-35). Because this claim addresses matters on the trial record, but petitioner failed to raise it on direct appeal, it is unexhausted and procedurally barred.[24]

In any event, the claim is manifestly baseless. The petitioner's burden in demonstrating insufficiency of the evidence is a "very heavy" one. Fama, 235 F.3d at 811 (quoting United States v. Soto, 716 F.2d 989, 991 (2d Cir. 1983)). Assuming that no procedural bar impedes his application, a petitioner is entitled to habeas relief only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 324 (1979)). Furthermore, "we must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor." Id.

As Justice Obus noted at sentencing, by Mr. Reyes's own admission, he had armed himself with a gun "for a substantial period of time prior to the incident itself and eventually ended

---

[24] Again, petitioner no longer has an available state-court remedy but cannot show cause and prejudice or demonstrate that a failure to consider this claim would trigger a fundamental miscarriage of justice.

up using that weapon at the time of this incident." (Sent. Tr. 32:1-5). Moreover, he had apparently had prior run-ins with Rosario, and his conduct at the time of the fatal encounter certainly permitted the inference that he intended to kill his victim. In short, the evidence at trial was more than sufficient to justify the jury's conviction of Reyes on the murder charge. (Sent. Tr. 33:4-17).

### e. Ineffective Assistance of Trial Counsel, Based on Failure to Move for a Mistrial

Petitioner's remaining new claim once again targets the performance of trial counsel -- this time for failing to move for a mistrial when the jury informed the court that it was deadlocked. (Coram Nobis 23-25). This claim is also procedurally barred and meritless.

Petitioner failed to assert this version of his Sixth Amendment claim until he filed his coram nobis application, which is not the proper vehicle for challenging trial counsel's performance. In short, he failed to exhaust the claim and has no basis for avoiding the resultant procedural bar. In any event, the claim is meritless. Counsel's decision not to move for a mistrial

when the jury reported a deadlock is obviously not an omission that would be tantamount to a failure to render minimally professional services, and equally obviously did not prejudice petitioner.

## CONCLUSION

We conclude that petitioner's claims in his original petition are without merit, and that those in his amended petition are time-barred. All but two of those new claims are also procedurally barred, and all are meritless. Accordingly, the petition for a writ of habeas corpus should be denied. We further recommend denial of a certificate of appeal, as petitioner fails to raise any issue worthy of appellate review pursuant to 28 U.S.C. § 2253. See Flemming v. New York, 2013 WL 4831197, *14-15 (S.D.N.Y. Sept. 10, 2013)("To warrant the issuance of a certificate of appealability, 'petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'")(quoting Middleton v. Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005)(per curiam)).

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Loretta A. Preska, 500 Pearl Street, Room 2220, and to the chambers of the undersigned, 500 Pearl Street, Room 1670, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Chief Judge Preska. Failure to file timely objections may constitute a waiver of those objections both in the District court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 470 U.S. 140, 150 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

87

**Dated: New York, New York**
**March 12, 2015**

                                        **Respectfully submitted,**


                                        _____
                                        **MICHAEL H. DOLINGER**
                                        **UNITED STATES MAGISTRATE JUDGE**


Copies of the foregoing Report and Recommendation have been sent today to:


Malancha Chanda, Esq.
New York County District Attorney's Office
One Hogan Plaza
New York, NY 10013

Mr. Earl Reyes
07-A-7043
Attica Correctional Facility
639 Exchange St.
Attica, NY 14011-0149